**CITY OF AUSTIN, Appellant,**

v.

**Nelson PUETT, Jr., Appellee.**

**No. 10822.**

Court of Civil Appeals of Texas.

Austin.

March 1, 1961.

Rehearing Denied March 29, 1961.

---

Doren R. Eskew, City Atty., C. J. Taylor, Jr., Dudley Fowler, Asst. City Attys., Austin, for appellant.

O'Quinn, McDaniel & Randle, Austin, for appellee.

GRAY, Justice.

Appellee, Nelson Puett, Jr., filed this suit against the City of Austin to declare his title to a tract of 54.95 acres of land, described by metes and bounds, free of any easement claimed by the city and for injunctive relief restraining the city from maintaining a bridge resting partly on his land and requiring the city to remove the bridge.

Appellee alleged that he was the owner of the 54.95 acre tract of land; that said land is located outside of but adjoins the corporate limits of the city; that Shoal Creek forms the boundary between the said land and the city and is the eastern boundary of the land; that Twin Oaks Drive, a public street in the city, comes to a dead end at Shoal Creek opposite his said land; that Gullett School, an elementary public school, is located south of his land, and that there are no public ways on or across the 54.95 acre tract. He alleged that in July, 1959, the city, through its director of planning, obtained oral permission from appellee to place a footbridge across Shoal Creek at the west end of Twin Oaks Drive to connect with and rest upon appellee's land "in order to provide temporary passage for school children walking to Gullett School * * *" that in response to a request from the city for written permission to place the bridge partly on appellee's land he wrote a letter on August 12, 1959 confirming his oral "permission for the temporary arrangement theretofore made," and that thereafter the city moved a bridge to said location which bridge extends approximately 30 feet onto his land. Appellee then alleged that subsequent to the time the bridge was placed as stated he sought to subdivide his property and submitted to the city plans for such subdivision which showed an extension of Twin Oaks Drive across Shoal Creek into his land; that he was advised by the city that it did not intend to extend Twin Oaks Drive westward but proposed to leave said street dead-ended at Shoal Creek and that a crossing on said creek would be designated opposite appellee's land at a point some 400 feet north of Twin Oaks Drive; that appellee then revised his plans for subdivision of his land, withdrew "the temporary permission theretofore given for the footbridge" in anticipation of developing his land for residence lots and on January 5, 1960 he gave written notice to the city to remove the bridge from his land. Appellee further alleged that he

"* * * gave the City of Austin permission in August, 1959, for the footbridge to be placed across Shoal Creek from Twin Oaks Drive to Plaintiff's land, such permission was given for the purpose only of permitting school children to reach Gullett school under a temporary arrangement and

only until such time as permission should be withdrawn by Plaintiff or until permanent arrangements, if any, should be made in connection with the subdivision of Plaintiff's land into lots and blocks. Such subdivision has not been made by Plaintiff, and no permanent arrangement has been effected by Plaintiff or approved by the City of Austin under laws and regulations controlling the subdivision of land in and near incorporated cities in this state."

The City answered by a plea of not guilty, a general denial, special denials, and that appellee has dedicated a public way across his land for pedestrian passage which dedication was neither conditional nor temporary and is:

"August 12, 1959
"Mr. Hoyle M. Osborne
"City Planning Director
"City Hall
"Austin, Texas
"Dear Mr. Osborne:

"You certainly have my permission to move the bridge on Hunt Trail up to Twin Oaks Drive and let the children walk across it and also come across my land to school.

"For your information, I will have— in a very few weeks—preliminary subdivision for that land so you can start thinking about putting in a permanent type of bridge on Twin Oaks if you want one.
"Yours truly,
"Nelson Puett."

The city then alleged that the dedication was accepted; that the bridge was promptly moved to the location and a walkway was improved from the west end of the bridge to Treadwell Boulevard; that appellee knew of and acquiesced in the location of the bridge and walkway thereby fixing its location on the ground, and that since such time the same has been used by the public. The city prayed for judgment declaring the existence of the public way dedicated by appellee and that he be enjoined from interfering with the public use thereof.

Appellee filed a motion for summary judgment and accompanied it with his affidavit. The city answered the motion for summary judgment, attacked the affidavit of appellee attached to the motion and asked that it be stricken. The trial court granted appellee's motion and rendered judgment quieting appellee's title to the land in question, declaring that the city has acquired no rights in such land by dedication or otherwise, that appellee has the right to remove the bridge unless the same is removed by the city within thirty days, and enjoining the city from going upon appellee's land except for the purpose of removing the bridge.

The city has appealed from the above judgment and here presents two points. These are to the effect that the trial court erred in granting appellee's motion for summary judgment because: the motion is not supported by affidavits meeting the requirements of Rule 166–A(e), Texas Rules of Civil Procedure; and genuine issues of material facts were properly raised.

Appellee's affidavit attached to his motion for summary judgment states: that he has read the original petition filed in the cause, that he knows of his own knowledge that all of the allegations, statements and facts there pleaded are true and correct, "and I hereby adopt the same in this my sworn affidavit." Appellee's affidavit then states: that at all times mentioned he was and still is the owner in fee simple of the land in question; that he wrote the letter of August 12, 1959 and attached a copy of such letter to his affidavit. He stated that subsequent to August, 1959 he learned the city did not plan a permanent type bridge on Twin Oaks Drive and that a permanent easement for the bridge at that place "was being requested of me. I then wrote a letter to the Planning Director, dated January 6, 1960, and told him I wanted the footbridge removed immediately * * *

and that if it was not removed within ten days I would move it and bill the city for the cost." A copy of the letter is attached to the affidavit. He further said that the 54.95 acres of land lies outside of the corporate limits of the city and that the land claimed by the city "as mentioned above is beyond the boundaries and control of the city of Austin."

The majority adopts the statement of the case hereinabove made. They disagree with me on the conclusion I have reached. Their views follow:

Associate Justice HUGHES' view is:

The letter of August 12, 1959, from Mr. Puett to Mr. Osborne, measures the rights of the parties, as well as those benefited thereby.

■ The letter purports only to give "permission" to move the bridge on the Puett land and to "let" children cross the bridge and the land.

"Let" in the sense there used means to "permit or to allow." It has the same meaning as "permission."

"Permission" has been defined by 2 Bouv.Law Dict., Rawles Third Revision, p. 2569 as "A license to do a thing; an authority to do an act which without such authority would have been unlawful."

In Settegast v. Foley Bros. Dry Goods Co., 114 Tex. 452, 270 S.W. 1014, 1016, a license was defined as "a privilege or authority given to one or retained by one to do some act or acts on the land of another, but which does not amount to an interest in the land itself."

In Latimer v. Hess, 183 S.W.2d 996, 997, Texarkana Civil Appeals, writ ref., it is stated:

"If the instrument in question grants an interest in the land, or gives the right of user of such land, then an easement is created; if only permission is given under such instrument for one to do some act or acts on the land of the one granting the right, then it is a license only. An easement is an interest in land; a license is merely a privilege to do some act or acts on the land, but is not an interest in the land itself."

The general rule is that gratuitous licenses are revocable at the will of the grantor. 27 Tex.Jur. p. 860, 53 C.J.S. Licenses § 89, pp. 815–820, Fort Worth Stockyards Co. v. Brown, 161 S.W.2d 549, Fort Worth Civil Appeals, no writ history.

These are exceptions to this rule, the only one of possible application here is as stated in 27 Tex.Jur. supra, "Where the licensee has been induced to expend a considerable amount of money or labor in reliance on the subsistence of his license."

It is not shown here that any "considerable" sum of money was expended in moving the footbridge. As a matter of common knowledge, we know that such an expenditure was not involved.

It is also my opinion that it was incumbent on the city to plead and substantiate equities relied on to make the license irrevocable. This it failed to do.

Chief Justice ARCHER'S view follows:

I would not disagree to remand this case because I question the sufficiency of the appellee's motion for summary judgment with its accompanying affidavits and reference to the original petition, but I do not believe that the manner in which the use or dedication of the walkway as claimed by appellee constitutes a permanent dedication to the city for the public of the undescribed area.

As all of the material recitations and statements as well as the letters are set out in Associate Justice GRAY'S opinion I do not restate them. But assuming that all such could be substantiated on a trial, still such would not as a matter of law constitute a binding dedication by Puett.

I believe at most the statement attributed to Puett and the letter constitutes no more than a permissive grant to a named limited segment of the public.

Associate Justice HUGHES has expressed his views and has cited certain authorities which I accept and I see no reason to recite them.

It is the opinion of the majority that the judgment of the trial court be and it is affirmed.

Affirmed.

GRAY, Justice (dissenting).

I do not agree with the holding of the majority and will express my views.

Rule 166–A(e), Texas Rules of Civil Procedure, provides that affidavits supporting or opposing motions for summary judgment shall be made on personal knowledge, they shall set forth such facts as would be admissible in evidence and shall affirmatively show that the affiant is competent to testify to the matters stated by him.

In order for one to be entitled to the benefits of the rule all of the provisions thereof must be complied with. Tobin v. Garcia, Tex., 316 S.W.2d 396.

It is the general rule that an affidavit which merely adopts the allegations of the pleadings is not sufficient to support a motion for summary judgment. Duffard v. City of Corpus Christi, Tex.Civ.App., 332 S.W.2d 447, and the authorities there cited. This rule when tested by the provisions of Rule 166–A(e) supra needs no explanation when applied to pleadings which state matters that are opinions and legal conclusions and in the case here the intent of appellee in dealing with the city.

I think it is here proper to determine the issues made by the pleadings of the parties, and first I will notice undisputed matters.

Appellee alleged that he was the owner of the land over which the city claims an easement. The city asserts that it acquired the easement through or from appellee as such owner. Appellee and the city both say that appellee wrote the letter of August 12, 1959 and that afterwards the city moved the bridge to the location and so placed it that in part it rested on appellee's land. Thus acceptance by the city of appellee's offer is not a controverted issue. The parties agree that appellee's land is outside of the corporate limits of the city.

The city's answer to appellee's motion for summary judgment was accompanied by affidavits. The affidavit of Hoyle Osborne, the city's Planning Director, states that his first conversation with appellee concerning the bridge and walkway at Twin Oaks Drive and concerning the location of Twin Oaks Drive and Shoal Creek Boulevard across his proposed subdivision occurred in late October or early November, 1959. He said that on August 11, 1959 he tried to reach appellee by telephone, was unable to reach him, left his telephone number and asked that appellee call him; that he had to leave his office and instructed his assistant, Evelyn Butler, to talk to appellee if he called, and said he received the letter from appellee granting the requested way. He said the purpose of his call to appellee was to ask him for a walkway for school children.

Evelyn Butler said:

"Mr. Osborne was called out of the office and while he was out, Mr. Puett returned his call, which I received. I recognized Mr. Puett's voice when he called, and advised him a problem had arisen concerning access for the children attending Gullett School but living east of Shoal Creek and told him that the City would like to have a way across his land from the end of the pavement on Twin Oaks Drive to the end of the pavement on Treadwell Boulevard for a wooden footbridge and passageway for these school children. Mr. Puett stated that he had received a number of calls about this

matter and upon being advised that he would not have to pay the cost of locating the bridge and walkway he readily assented to grant the way requested. I then requested that Mr. Puett send us a letter granting the way indicated."

Ed Stevens said:

"Sometime after August 13, 1959, I received a telephone call from Mr. Nelson Puett, Jr., in which he stated that he had been receiving calls concerning a way for school children east of Shoal Creek to reach Gullett School. Mr. Puett requested that I tell the people who inquired that he had given the way across his land from Twin Oaks Drive to Treadwell Boulevard."

Appellee alleged that he first gave oral permission to the city "to place a footbridge across Shoal Creek at the west end of Twin Oaks Drive to connect with and rest upon Plaintiff's land in order to provide *temporary* passage for school children walking to Gullett school * * *" He alleged that he wrote the letter of August 12, 1959 "confirming said oral permission." The city asserts the right is a permanent easement. It is thus seen appellee by adopting his pleading states his intent. The city's offered affidavits deny the oral conversation and do not refer to a "temporary" passage. Such intent is not mentioned in the letter of August 12 nor is it disclosed in any manner other than by his own statements in his petition. In Owens v. Hockett, 151 Tex. 503, 251 S.W.2d 957, 958, the court approvingly quoted from Elliott, Roads and Streets, 2nd Ed., p. 121, Sec. 124, as follows:

"It is essential that the donor should intend to set the land apart for the benefit of the public, for it is held, without contrariety of opinion, that there can be no dedication unless there is present the intent to appropriate the land to the public use. If the intent to dedicate is absent, then there

is no valid dedication. The intent which the law means, however, is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. * * * If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public and individuals act upon such conduct, proceed as if there had been in fact a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law will not permit him to assert that there was no intent to dedicate, no matter what may have been his secret intent."

The court also quoted from Abbott v. Mills, 3 Vt. 521, 527, 23 Am.Dec. 222, as follows:

"* * * 'the act of throwing open the property to the public use, without any other formality, is sufficient to establish the fact of a dedication to the public; and if individuals, in consequence of this act, become interested to have it continue so, * * * the owner cannot resume it.'"

Appellee's affidavit then, by adopting his petition, states what his secret intention was and he being an interested party the weight and credibility of his testimony, in any event, presented an issue for the trier of the facts. In 26 C.J.S. Dedication § 48, pp. 516–517, it is said:

"In the absence of substantial evidence of acceptance, the question of dedication is one of law for the trial court. Ordinarily, however, and particularly in cases where the facts are in dispute, the courts have taken the view that the ultimate question as to whether there has been a dedication in the particular case is not merely one of law but of fact to be submitted to, and passed on by, the jury in cases tried by jury or to be decided by the court in cases tried by a court without a jury, that is to say, the question of

intent, as well as the question of the existence or the fact of dedication, and the acceptance are regarded as questions of fact to be decided by the jury or by the court in cases tried without a jury. Also, it has been held that the sufficiency of the user to constitute acceptance, whether or not the user was adverse, whether a public right of way has been acquired by dedication or by prescription, and whether a municipality was estopped by its past actions to accept a dedication long after its offer are questions of fact for the trier of the facts."

No particular form of words or conduct by the landowner is required when he intends to set apart land for public use. The law requires only clear words or conduct of the owner from which dedicatory intention of the landowner may be unmistakenly adduced. When intention is disclosed only an act or declaration of acceptance or reliance is necessary to complete the dedication. 19 Tex.Jur.2d p. 191, Sec. 14.

Appellee says that he gave to the city only a permissive and temporary right to use his land and that he could revoke such right at any time. These are issues to be determined from the evidence. Of course permission is an element in determining the character of the use in question here and even if it be said that the right to use appellee's land was no more than a license appellee's right to revoke it would in any event depend on the attending circumstances such as the acts done in acceptance of the license and whether from its very nature its use was to be continuous. See: Neches Canal Co. v. Dishman, Tex.Com. App., 44 S.W.2d 955, 27 Tex.Jur. p. 860, Sec. 7. Here the use of appellee's land was for school children going to and from Gullett School. There can be no question that such use concerns the general public or certainly a portion thereof. In L-M-S Inc. v. Blackwell, 149 Tex. 348, 233 S.W.2d 286, 290, the court said:

"In 50 C.J., p. 864, § 94, Public Use is defined as follows: 'In general it may be said that a public use is one which concerns the general public or a portion thereof as distinguished from particular individuals or estates.' In support of this rule many decisions are cited, including two Texas cases: Keller v. Corpus Christi, 50 Tex. 614, 629, 32 Am.Rep. 613; Leathers v. Craig, Tex.Civ.App., 228 S.W. 995."

The City of Austin is a home rule city and as such it is authorized by Sec. 3 of Art. 1175, Vernon's Ann.Civ.St., to hold by gift or otherwise any character of property, and by Section 15 of that article it is authorized to take, by condemnation, property within or without the city limits for, among other purposes, streets, alleys, highways and boulevards.

The charter of the city provides:

"Section 3. *General Powers.* The city shall have all the powers granted to cities by the Constitution and the laws of the State of Texas, together with all the implied powers necessary to carry into execution such granted powers. * * * The city * * * may acquire property within or without its corporate limits for any municipal purposes in fee simple, or in any lesser interests or estate by purchase, gift, devise, lease or condemnation * * *."

In his brief appellee says:

"The position of Puett in this case may be stated very simply. First, the letter of August 12, 1959, to the City Planning Director was intended to and did have the effect only of extending to the City a limited permissive use, subject to withdrawal at Puett's option, and as to these facts there is no issue, only a question of law. Second, even if the letter of August 12, 1959, could amount to grant of an easement, the City was without authority to accept it because the land is outside the city limits and acceptance by the City would be ultra vires, and as to the facts sup-

porting this view there is no issue between the parties, only a question of law."

Above it is shown that issues of facts are presented and that the city has authority to acquire property outside of its corporate limits.

It is my opinion that the rules announced in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, as to granting summary judgments are clearly violated by the trial court's judgment.

I would reverse the judgment appealed from and remand the cause for a trial on its merits.