COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| J. CLEO THOMPSON AND JAMES CLEO THOMPSON, JR., L.P., WES-TEX DRILLING COMPANY, L.P., AND APPROACH RESOURCES I, L.P., | § § § | No. 08-07-00152-CV |
| | § | Appeal from the |
| Appellants, | § | 112th Judicial District Court |
| v. | § | of Crockett County, Texas |
| | § | (TC# 05-09-06794 ) |
| CHERYL ELIZABETH CLAYTON, | § | |
| Appellee. | | |

**O P I N I O N**

In a letter dated January 2, 1975, Mr. James Cleo Thompson, Jr. offered Mr. Joe Clayton $3,000 on behalf of J. Cleo Thompson, James Cleo Thompson, Jr., and Wes-Tex Drilling Company for the right to cross his land to reach an adjacent property owned by Mrs. Ann Cole Lauffer. Mr. Clayton accepted the offer on the condition that Thompson, et al would repair the road to good condition whenever it is damaged by their drilling or operating vehicles since this was the only access road to the east side of the ranch.

Mr. Thompson stated in his affidavit that he is a member manager of J. Cleo Thompson Petroleum Management, LLC, the general partner of J. Cleo Thompson, and James Cleo Thompson, Jr. L.P. Mr. Thompson is the part owner of a working interest in the lease covering the lands owned by Ms. Clayton and the Lauffer Estate. Mr. Thompson personally negotiated the January 2, 1975 letter with Mr. Clayton. Mr. Thompson stated that Mr. Clayton represented to him that the company had a right to travel over the roadway at issue to access its interests on the

Lauffer Lease, and Mr. Thompson believed and relied on that representation. From 1975 until after Mr. Clayton's death, no one objected to the use of the roadway. Attached as an exhibit to the affidavit, was a cashed check payable to Joe Clayton in the amount of $3,000, which was the consideration for the right to cross the Clayton property to access the Lauffer Lease.

By affidavit, Cheryl Clayton stated that she is the successor in interest to a portion of the ranch through which the road at issue runs. Ms. Clayton saw the original route which passed near her house while both her parents were alive. In 1997, Ms. Clayton requested the oil companies use an alternative road, a further distance from the house, with which they complied. Ms. Clayton stated there have been more vehicles and personnel using the road than in 1975. The trucks have deviated from the road and travel outside the width of the existing road. Ms. Clayton stated that the agreement has been violated numerous times by deviating from the designated road, leaving gates open and unlocked, not repairing the cattle guards or putting them back in place when moved, drilling wells during hunting season, and placing a waterline across her property without permission.

Mr. James Dalby, district superintendent with J. Cleo Thompson and James Cleo Thompson, Jr. L.P., stated in an affidavit that since 1975 to 2006, the company has used the roadway across the Clayton property to access and develop minerals under the Lauffer Lease. The company has maintained and improved the roadway over that same time period through grading and adding caliche. The company has spent many dollars to keep the roadway in good working condition, and none of the costs were assessed to Ms. Clayton or her predecessor in title.

Ms. Clayton brought a declaratory judgment suit to determine whether Appellants could continue to use a road across her property, and if so, under what terms. Plaintiff and Defendants

filed motions for partial summary judgment. At the beginning of trial, the judge stated that he was of the opinion that the agreement terminated upon the death of Joe Clayton. The Defendants put on a bill of exception. The parties agreed to introduce attorneys fees, and allow the court to decide on those fees. The judgment signed by the trial court granted Ms. Clayton's motion for partial summary judgment and denied Defendants' motions for summary judgment. The judgment further states that the defendants and their successors or assigns may not in any way access the Lauffer Ranch or the Ann Cole Mineral Estate by crossing the property formerly owned by Joe Clayton, and awarded Plaintiff attorney's fees.

Appellants raise four issues on appeal: (1) the trial court erred in granting Plaintiff Clayton's motion for partial summary judgment and denying Defendants' motion and in concluding the Road Agreement had terminated as a matter of law; (2) the trial court erred in barring access from the Clayton property to the Lauffer property under the oil and gas lease; (3) the trial court erred in granting partial summary judgment after trial; and (4) because Appellants were authorized to use the road, the issue of attorney's fees should be remanded for reconsideration by the trial court. We reverse, render, and remand.

A traditional motion for summary judgment is properly granted only when the movant establishes that there are no genuine issues of material fact to be decided and that he is entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or plead and prove as a matter of law at least one element of an affirmative defense. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If the defendant establishes a right to summary judgment, the

burden shifts to the plaintiff to present evidence raising a fact issue. *See id*. In reviewing the grant of summary judgement, we view the evidence in the light most favorable to the non-movant and make every reasonable inference and resolve all doubts in favor of the non-movant. *See Centeq Realty, Inc.*, 899 S.W.2d at 197. Where the trial court's judgment does not specify the grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Garcia v. El Paso Ltd. P'ship*, 203 S.W.3d 432, 435 (Tex.App.--El Paso 2006, no pet.). We review *de novo* a trial court's grant or denial of a traditional motion for summary judgment. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005). When the trial court grants one party's motion for summary judgment and denies the other, we review both motions, and if we find the trial court erred, we will reverse and render the judgment the trial court should have rendered. *See Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999).

Issues of law, such as construction of a written contract, are reviewed *de novo*. *Angell v. Bailey*, 225 S.W.3d 834, 838 (Tex.App.--El Paso 2007, no pet.). In construing a contract, a court's primary concern is to give effect to the written expression of the parties' intent. *Id*. at 839. Generally, any language that clearly shows an intention to grant an easement is sufficient for the purpose; no special form or particular words need be employed. *Hubert v. Davis*, 170 S.W.3d 706, 711 (Tex.App.--Tyler 2005, no pet.).

Generally, an easement constitutes an interest in the land itself, while a license merely confers a privilege to do some act or acts upon the land without conveying any interest in or title to the land itself. *Samuelson v. Alvarado*, 847 S.W.2d 319, 323 (Tex.App.--El Paso 1993, no writ). An easement has been further defined as a "liberty, privilege, or advantage in land without

-4-

profit, existing distinct from the ownership of the soil." *Richter v. Hickman*, 243 S.W.2d 466, 468 (Tex.Civ.App.--Galveston 1951, no writ). The creation of easements may be by an express grant by implication, by estoppel, by prescription, or by the purchase of land with reference to a map or plat showing abutting roads or streets. *See Horne v. Ross*, 777 S.W.2d 755, 756 (Tex.App.--San Antonio 1989, no writ). Since an easement is an interest in land, the creation and transfer of such an interest is subject to the statute of frauds, unless the easement is imposed by operation of law. *See Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 203 & n.5 (Tex. 1962)(noting a license may rise to the dignity of an easement and must be in writing). An easement is not revocable at will. *See Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). An easement that terminates upon the happening of a particular event or contingency is a "determinable easement." *Hubert*, 170 S.W.3d at 712.

A license is defined as a privilege or authority given to one or retained by one to do some act or acts on the land of another, but which does not amount to an interest in the land itself. *City of Austin v. Puett*, 344 S.W.2d 717, 720 (Tex.Civ.App.--Austin 1961, writ ref'd n.r.e.). The general rule is that gratuitous licenses are revocable at will. *Id*. at 720. A license in real estate is revocable at will. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 203 (Tex. 1963). A license terminates upon the death of the licensor. *See Chicago, R.I. & G. Ry. Co. v. Johnson*, 156 S.W. 253, 256 (Tex.Civ.App.--Amarillo 1913, writ ref'd). There are exceptions to the general rule, one of which is where the licensee has been induced to expend a considerable amount of money or labor in reliance on the subsistence of his license. *City of Austin*, 344 S.W.2d at 720.

The agreement at issue follows:

Dear Mr. Clayton:

This letter is written for the purpose of putting into writing our verbal understanding concerning your granting us permission to pass over your lands along a road which passes through a portion of the following lands owned by you:

> N/2 of Section 1, Block GH, GC&SF Ry. Co. Survey;
> Section 26, Block CD, GC&SF Ry. Co. Survey;
> Section 8, 9, 10 and 11, Block 1, GC&SF Ry. Co. Survey
> All in Crockett County, Texas

and passing on to the property presently owned by Mrs. Ann Cole Lauffer in Section 13, Block 1, GC&SF Ry. Co. Survey along with other lands owned by Mrs. Lauffer and leased to us, under the following terms and conditions:

1. We agree to pay to you the sum of $3,000.00 cash. (Said check is enclosed herewith covering the full and complete payment and you are hereby authorized to deposit said check as evidence of your acceptance, when you have executed this letter in the space provided below.)

2. It is understood that J. Cleo Thompson, James Cleo Thompson, Jr. and Wes-Tex Drilling Company have the right to pass on to the lands of Mrs. Ann Cole Lauffer for the purpose of drilling, exploring, developing and producing the lands presently held by Thompson, et al on the Ann Cole Lauffer mineral estate. It is further understood that Thompson, et al does not have the right to extend these roads off Mrs. Lauffer's land on to other oil and gas leases we may acquire hereafter.

3. It is understood and agreed that Thompson, et al does not have the right to assign to others the rights granted herein, except Thompson, et al may assign said Lauffer lease to third parties. It is not the intent herein to grant to Thompson rights other than to develop the Lauffer lease and it is understood that if Thompson so elects they may transfer and assign the rights herein granted to the purchaser from Thompson, if any.

4. It is understood that Thompson, et al will not drill any wells on the Lauffer lands during deer hunting season.

5. It is understood that Thompson, et al will install a cattle guard and gate where Thompson crosses the present fence line between the Clayton and Lauffer properties and that the gate will be kept locked at all times, except when Thompson, et al has drilling, workover or completion equipment on said Lauffer lands. It is also understood that Thompson will properly brace said fence.

6. It is understood that Thompson, et al will not have the right to open up the roads to the public or any person other than those working for Thompson, et al either directly or indirectly. It is understood that Thompson, et al and all of his personnel, agents or nominees will have the right and privilege of passing to and from at their sole discretion.

Supplement to 6.: It is understood and agreed that Thompson, et al will put this road back in good condition whenever it is damaged by their drilling or operating vehicles. This is necessary since it is the landowner's only access road to the east side of the ranch.

7. All rights granted herein will terminate when Thompson, et al or their successors and assigns plug and abandon and release said Lauffer lands.

If the above meets with your approval, you are requested to please indicate your acceptance by signing in the space provided below, retain the original for your files and return to us one executed copy.

Yours truly,
James Cleo Thompson, Jr.

The agreement initially states Mr. Clayton is granting permission to Thompson, et al to pass over his land. However, the agreement states in the body that Thompson, et al "have the right to pass on to the lands of Mrs. Ann Cole Lauffer for the purpose of drilling, exploring,

developing and producing the lands presently held by Thompson, et al on the Ann Cole Lauffer mineral estate." The agreement also gives Thompson, et al the right and privilege of passing to and from at their sole discretion. The right of entrance to and exit from an estate is generally an appurtenant easement. *Daniel v. Fox*, 917 S.W.2d 106, 110 (Tex.App.--San Antonio 1996, writ denied). Appellee argues that no words of grant or conveyance were used in the agreement. However, no special form or particular words need to be employed. *Hubert*, 170 S.W.3d at 711. The right and privilege of passing to and from at their sole discretion shows an intent to create an easement. *See Hubert*, 170 S.W.3d at 712 (grant of free use and right of passage with free ingress and egress held to create an easement).

Appellee also argues that the agreement does not comply with the Statute of Frauds and the Statute of Conveyances because the easement was not adequately described, the signatures to the agreement were not acknowledged, and the document was not recorded and could not be recorded. The Statute of Fraud requires that the agreement be in writing and signed by the grantor. TEX.BUS.&COM.CODE ANN. § 26.01 (Vernon 2009); *Vinson v. Brown*, 80 S.W.3d 221, 226 (Tex.App.--Austin 2002, no pet.). The Statute of Conveyances requires a writing signed by the grantor as well. TEX.PROP.CODE ANN. § 5.021 (Vernon 2004); *Murphy v. Long*, 170 S.W.3d 621, 624 (Tex.App.--El Paso 2005, pet. denied). Here, the agreement was in writing and signed by Mr. Clayton. The description of an express easement must be definite and certain upon the face of the instrument itself or in some writing referred to in the instrument, such that a surveyor can go upon the land and locate the easement from the description. *Hubert*, 170 S.W.3d at 710. However, an easement has been found where the tract of land to be burdened by an express easement is sufficiently identified even if there is no exact designation of the location of the

easement. *Vinson*, 80 S.W.3d at 227, *citing Jones v. Fuller*, 856 S.W.2d 597, 602 (Tex.App.--Waco 1993, no writ). A description of the easement was added by Mr. Clayton in supplemental Section 6 as "the landowner's only access road to the east side of the ranch." Appellee finally argues that the agreement did not form a valid easement because the signatures were not acknowledged, and thus the document cannot be recorded, but an unrecorded easement is binding on a successor in interest who has notice of the agreement. TEX.PROP.CODE ANN. § 13.001(b). Ms. Clayton's affidavits show she had knowledge of the agreement. We find the agreement granted an express determinable easement that ends when "Thompson, et al or their successors and assigns plug and abandon and release said Lauffer lands." Issue One is sustained.

Having sustained Appellant's Issue One, we reverse the judgment of the trial court, render judgment that an easement was transferred in the 1975 agreement, and remand to the trial court for a reconsideration of attorney's fees.


June 10, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.