COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

APPROACH RESOURCES I, L.P., §

§　　　No. 08-10-00247-CV

Appellant, §

§　　　Appeal from the

v. §

§　　　112th Judicial District Court

§

CHERYL ELIZABETH CLAYTON, §　　　of Crockett County, Texas

§

Appellee. §　　　(TC# 05-09-06794)

§

## O P I N I O N

Approach Resources I, L.P. ("Approach") appeals the trial court's judgment denying its request for attorney's fees under the Texas Uniform Declaratory Judgment Act. Approach raises six issues for this Court's review. Issues One through Five contain Approach's analysis of the trial court's failure to award its requests for attorney's fees, which the entity characterizes as an abuse of discretion. In Issue Six, Approach requests that this Court exercise its authority to reform the underlying judgment to correct a clerical error. Affirmed as reformed.

## BACKGROUND

This case is before the Court for a second time, following remand for reconsideration of attorney's fees in light of our opinion in *Thompson v. Clayton*, 346 S.W.3d 650, 657 (Tex.App.-- El Paso 2009, no pet.). In the first appeal ("*Clayton I*"), we were asked, in part, to review the trial court's summary judgment in favor of property owner Ms. Elizabeth Clayton regarding the viability of a letter agreement entered into by Ms. Clayton's father in 1975.[1] *See Clayton*, 346

---

[1] For a full recitation of the facts, arguments, and analysis related to the summary judgment, *see Clayton*, 346 S.W.3d at 653-54.

1

S.W.3d at 654. In *Clayton I*, the trial court determined as a matter of law that the 1975 letter agreement terminated upon the death of Ms. Clayton's father, and rendered a declaratory judgment to that effect. *See id.* at 653. The trial court also awarded Ms. Clayton, "reasonable and necessary attorney's fees" in excess of $136,000 for proceedings in the trial court, and contingent awards for appeal to this Court, and the Texas Supreme Court.

On appeal, this Court concluded that the 1975 letter agreement remained in effect, and provided Mr. J. Cleo Thompson, James Cleo Thompson, Jr., L.P., Wes-Tex Drilling Company, and Approach (collectively, "the declaratory judgment defendants"), a valid easement on Ms. Clayton's property. *See id.* at 656-57. The easement permitted the declaratory judgment defendants to build and maintain a road across Ms. Clayton's ranch so that they could access oil drilling equipment on neighboring property. *See id.* As a result, the summary judgment was reversed and the case was remanded, "to the trial court for reconsideration of attorney's fees." *See id.* at 657.

On remand the trial court conducted an additional hearing, and requested additional evidence and argument from the parties regarding attorney's fees. During the hearing, the trial court expressed its concern that any fees awarded should relate only to the litigation surrounding the validity of the 1975 letter agreement, and should not include fees related to any other causes of action pending in the case. To assist the court in understanding the posture of the case prior to the first appeal, Ms. Clayton called two witnesses: herself and Attorney Paul Millican, who had represented Ms. Clayton throughout the litigation.

According to Mr. Millican, in addition to the work related to the validity of the 1975 letter agreement, he also represented Ms. Clayton relative to her claims for damages to the surface of her property caused by the defendant's activities, as well as during negotiations for a

2

separate agreement governing the defendants' use of the road on her property. Mr. Millican

testified that independent of the easement validity dispute, the parties mediated a settlement for

Ms. Clayton's claim for surface damages related to what he characterized as breaches of the

1975 agreement. He explained further:

> After the mediation and actually after the trial itself, an issue arose because of a global release that was sent by the defendants to Ms. Clayton asking her to release all claims. Then the issue arose, well, if the defendants want a release from all claims, then we have these other surface damage issues that are totally unrelated to the road, but we will simply resolve those issues, too, if that's what the parties want to do.

> So, there was quit [sic] a bit of correspondence and phone calls between [counsel for Approach] and myself concerning those -- a little over $56,000 of surface damages that were unrelated to the road, and so that were not settled, however.

Ms. Clayton testified, without objection, that her father entered into the 1975 letter

agreement to permit the owners of an adjacent ranch, to cross the Clayton property to pursue

development of minerals. Ms. Clayton's father passed away in 2003. By that time, Approach

was producing minerals from both the adjacent property, and the Clayton Ranch directly. While

the continued effectiveness of the 1975 letter agreement was still in dispute, Ms. Clayton and

some of the declaratory judgment defendants attempted to negotiate a new agreement to govern

the use of the road. While the new agreement was never fully executed, the new negotiations led

Ms. Clayton to believe that the 1975 agreement was no longer enforceable. Ms. Clayton

explained that just prior to the time Mr. Thompson contacted her to begin negotiating a new road

agreement, Approach began drilling a new mineral well on the neighboring property.

Mr. Thompson also approached Ms. Clayton for permission to allow a geological team to cross

the property, via the road, to conduct a seismic study on the adjacent ranch. To Ms. Clayton's

knowledge, the geological team was forced to use an alternative route to access the adjacent

property when the parties failed to finalize the new road agreement.

3

Approach continued to use the road to access its wells on the adjacent property, as well as to conduct drilling operations on the Clayton Ranch. During this time, Ms. Clayton testified, Approach caused damage to her property by failing to drain their collection pits properly, leaving pools of oil on the property. These damages led to a separate dispute with Approach over the company's alleged misuse of the surface in its development of the minerals. In the summer of 2005, Approach offered to compensate Ms. Clayton for the surface damages in exchange for her permission to continue to use the road for access to its wells on the adjacent ranch. According to her testimony, Ms. Clayton refused to accept Approach's payment because she believed Approach was not complying with the terms of 1975 agreement. According to Ms. Clayton, Approach violated the terms of her father's agreement in three major instances: (1) Approach drilled a well on the adjacent property during hunting season; (2) Approach destroyed part of the property fence and access gate; and (3) Approach constructed an un-authorized water pipeline along the road.

Ms. Clayton filed the underlying lawsuit in September 2005.[2] In November 2006, approximately two weeks before trial, the parties attempted to mediate the entire case, including Ms. Clayton's claims related to surface damages, as well as her claims regarding the validity of the 1975 agreement. According to Ms. Clayton, during mediation, Approach agreed to settle the surface damages claim related to its drilling on the Clayton ranch for $10,000, despite the continuing litigation on the status of the 1975 letter agreement. Approach did not pay the settlement amount, however, until ten months later, just prior to the supersedeas hearing

---

[2] Ms. Clayton's second amended petition was the live pleading at the time the trial court entered judgment in *Clayton I*. In addition to her request for declaratory judgment, Ms. Clayton asserted claims for: trespass, negligence, breach of contract, and requested that the defendants be enjoined from using the road in order to protect her property from additional damage.

4

following the trial court's summary judgment in *Clayton I.*[3] Ms. Clayton testified, she incurred additional legal expenses preparing for the hearing, as Approach's non-payment was to be the primary issue for the trial court's consideration.

Following Ms. Clayton's testimony, the trial court advised the parties that they had until April 15, 2010, approximately six weeks from the date of the hearing, to submit their evidence and any additional arguments regarding attorney's fees. The court ordered the parties to segregate their claims for attorney's fees. J. Cleo Thompson, James Cleo Thompson, Jr., L.P., and Wes-Tex Drilling Company (collectively "Thompson") filed a joint motion for recovery of attorney's fees, with supporting evidence, on April 1, 2010. Thompson argued that segregation of attorney's fees was not appropriate given the inter-relatedness of the claims. In the alternative, Thompson submitted evidence, in the form of an affidavit by Attorney Pat Long Weaver, in which Ms. Weaver, again argued that the fees were not subject to segregation, but went on to state:

> 5. In the express alternative, and pursuant to [the trial court's] instructions to submit [Thompson's] reasonable, necessary and segregated attorney's fees by affidavit, I have attached hereto true and correct copies of the [invoices] for attorney's fees and expenses incurred by [Thompson] . . . .
>
> 6. The same discrete legal services were rendered to advance defenses to all of [Ms. Clayton's] claims, whether for declaratory judgment or for breach of contract, negligence and trespass. . . . The same services were necessary whether defending against the declaratory judgment claims or the other claims. The only segregation possible is for those fees incurred in connection with the mediation and settlement of [Ms. Clayton's] claims for breach of contract, negligence, and trespass. Accordingly, I have segregated those mediation and settlement fees and expenses, as reflected on the attached invoice copies. In addition, I have segregated fees and expenses incurred for post-judgment proceedings in the trial court, including in connection with the supersedeas hearing. I have not included invoices for the post-appeal proceedings in the trial court to recover [Thompson's] attorney's fees. [Thompson's] fees are not capable of further segregation.

---

[3] Approach tendered a check for the settlement amount in January 2007. Ms. Clayton refused the payment however, as acceptance of the check was conditioned on her signing a global release of claims.

7.  The attorney's fees and expenses incurred collectively by [Thompson] from the onset of the dispute through the appeal total $37,887.14.  Deducting the segregated fees and expenses in the amount of $3,225.65, from the total, [Thompson's] net fees and expenses were $34,661.49.

Approach filed its own motions and supporting evidence on April 7 and 13, 2010.  In its motions, Approach argued that due to the nature of Ms. Clayton's claims, its attorney's fees could not be segregated.  In addition to other exhibits, Approach submitted over one hundred pages of invoices, billing statements, and payment receipts as provided by its attorneys, and an affidavit sworn to by one of those attorneys, Mr. Michael E. McElroy.  Approach did not segregate, or attempt to segregate, any of the fees claimed, and requested an award of $249,510.30, for services through the appeal in *Clayton I*.

Ms. Clayton's attorney, Mr. Paul H. Millican, filed an affidavit on April 14, 2010, representing that Ms. Clayton's fees totaled $239,140.24.  Mr. Millican segregated the fees by claim, and requested an award of $53,515.56 for Ms. Clayton's declaratory judgment claim.  The fees related to the remaining causes of action, were segregated on the basis that they were resolved in mediation, or that there was no legal basis for recovery.

The trial court entered its judgment on May 25, 2010.  The court awarded J. Cleo Thompson, and James Cleo Thompson, Jr., L.P. $34,000, recoverable from Ms. Clayton.  The judgment states:  "All other relief as to attorney fees is DENIED."  Following the entry of judgment, the trial court provided detailed findings of fact and conclusions of law.  The following findings are relevant to the issues before this Court:

**FINDINGS OF FACT**

.    .    .

6

6. After suit was filed but before trial, the parties mediated the dispute and reached a partial settlement in which Thompson, Wes-Tex Drilling Company, and Approach agreed to pay Ms. Clayton $10,000 to resolve damages issues related to the 1975 agreement. However, following mediation, Approach did not adhere to the agreed settlement, instead conditioning its $10,000 payment on a release of additional claims unrelated to the 1975 agreement. For approximately 10 months, Approach refused to pay the $10,000 under the terms of the mediated settlement.

7. Approach's refusal to timely pay Ms. Clayton under the terms of the mediated settlement caused Ms. Clayton to incur additional and otherwise unnecessary attorneys' fees and expenses.

.        .        .

9. At the beginning of trial, [the trial court] granted Ms. Clayton's motion for partial summary judgment and denied the Defendants' motions for summary judgment.

10. At the trial on the remaining attorneys' fees claims, all parties were given the opportunity to offer evidence of their attorneys' fees. Ms. Clayton, Mr. Thompson, James Cleo Thompson, Jr. L.P., and Wes-Tex offered proof of their attorneys' fees.

11. Approach declined to provide any evidence of attorneys' fees at trial when asked if it intended to put on evidence of Approach's attorneys' fees.

.        .        .

14. On remand, all parties requested attorneys' fees, including Approach, who at trial had declined to offer any evidence of attorneys' fees.

15. On remand, Mr. Thompson, James Cleo Thompson, Jr., L.P., and Wes-Tex initially jointly requested summary judgment on attorneys' fees in the amount of $78,499.31. Approach requested summary judgment on attorneys' fees in the amount of $250,635.30. At that time, Ms. Clayton re-requested attorneys' fees as had previously been awarded.

16. [The trial court] denied the motions for summary judgment on attorneys' fees.

17. Subsequently, [the trial court] conducted a hearing on the remanded attorneys' fees issue, and permitted the parties to present argument and evidence.

18. At the hearing, [the trial court] requested that the parties provide evidence of segregated attorneys' fees for time and expenses related to litigation of the issues

7

appealed--not other issues, such as those settled prior to trial.

19. After the hearing, Approach submitted an affidavit that did not segregate attorneys' fees as requested by [the trial court]. All other parties provided evidence of segregated attorneys' fees as requested by [the trial court].

.      .      .

21. Approach waived its right to provide attorneys-fee evidence at trial, and did not prove its attorneys' fees related to the issues appealed on remand.

22. Approach failed to provide evidence expressly requested by [the trial court].

23. Approach failed to prove that the amount of attorneys' fees it incurred as a result of the litigation of unsettled issues ultimately appealed.

24. Approach failed to demonstrate that its failure to timely pay the amount of the pre-trial settlement under the terms of the settlement was not in bad faith.

25. Approach's failure to act in good faith cost Ms. Clayton time and resources.

26. Approach failed to prove the amount of its attorneys' fees.

.      .      .

## CONCLUSIONS OF LAW

1. Approach provided no evidence of its segregated attorneys' fees for work performed due to the litigation of appealed issues.

2. Approach's conduct in failing to maintain the road breached the 1975 agreement.

3. Approach failed to provide the amount of its segregated attorneys' fees.

4. It would not be just to award Approach its requested attorneys' fees.

5. It would not be just to award Approach any attorneys' fees.

6. It would not be equitable to award Approach its requested attorneys' fees.

7. It would not be equitable to award Approach any attorneys' fees.

.      .      .

12. It is just and equitable to award Mr. Thompson and James Cleo Thompson,

8

Jr., L.P. $34,000 in attorneys' fees.

13. It is just and equitable to award Ms. Clayton, Approach, and Wes-Tex no attorneys' fees.

14. To the extent necessary, each of the findings of fact shall be treated as conclusions of law, and each conclusions of law shall be treated as a findings of fact.

Approach perfected its appeal on August 13, 2010.[4] Approach raises five issues challenging the trial court's refusal to award attorney's fees in its favor. Issue One contains Approach's global challenge, in which the entity asserts the court abused its discretion by failing to award the requested fees. In Issues Two through Five, Approach addresses the potential bases for the court's decision and, in turn, argues that none support the trial court's judgment, rendering the failure to award fees an abuse of discretion. In Issue Six, Approach requests reform of the judgment to correct a clerical error.

## ANALYSIS

This appeal is premised on Approach's conclusion that the trial court abused its discretion by *failing* to award attorney's fees in response to the entity's request under the Texas Uniform Declaratory Judgments Act. The Texas Uniform Declaratory Judgments Act (UDJA) provides the trial court with discretion to award reasonable and necessary attorney's fees, in an amount that is just and equitable. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 37.009 (West 2008); *Murphy v. Long*, 170 S.W.3d 621, 628 (Tex.App.--El Paso 2005, pet. denied). The award is not dependent on a finding that the party prevailed in the action, and in its discretion, the trial court may decline to award fees to either party. *See Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637-38 (Tex. 1996).

---

[4] Approach is the only party to the judgment to pursue an appeal. Ms. Clayton has appeared and filed a brief as an appellee only.

9

Issue One presents Approach's foundational abuse of discretion argument. In Issues Two through Five, Approach presents additional arguments related to specific instances which it contends demonstrate the trial court abused its discretion by refusing to award fees. Combined, the specific question to be determined in this case is whether the trial court abused its discretion by concluding that *any* attorney's fee award would run afoul of the "equitable and just" standard required by the UDJA.

A trial court's decision to grant or deny attorney's fees will not be disturbed absent an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). In conducting an abuse of discretion review, this Court will view the evidence in the light most favorable to the trial court's ruling, and indulge every presumption in its favor. *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 444 (Tex.App.--Houston [14th Dist.] 2003, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, without reference to guiding rules and principles of law. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997).

Appellate review of an attorney's fee award under the Uniform Declaratory Judgment Act requires a multi-faceted analysis. *See Transcontinental Ins. Co. v. Crump*, 330 S.W.3d. 211, 231 (Tex. 2010). The reasonableness and necessity of the fee amount are fact questions. *See Ridge Oil Co., Inc. v. Guinn Investments, Inc.*, 148 S.W.3d 143, 162-63 (Tex. 2004). Determining whether to award fees, or how much of an award is equitable and just in a given case, are questions committed to the trial court's discretion because of the nature of the issue. *Ridge Oil Co., Inc.*, 148 S.W.3d at 161-62. Whether it is "equitable and just" to award attorney's fees depends, not on direct proof, but on the concept of fairness, in light of all the circumstances of the case. *Id.* at 162. As such, although a fact finder may determine the value of the reasonable and necessary expenditures, it remains for the court to determine how much, if any, of

10

the reasonable and necessary fees would constitute a just and equitable award. *Ridge Oil Co., Inc.*, 148 S.W.3d at 162.

This distinction was addressed by the Texas Supreme Court in *Ridge Oil Co., Inc.* In that case, the Supreme Court was asked to determine whether a trial court's decision to award only part of the fees which the jury had determined to be reasonable and necessary constituted an abuse of discretion. *Ridge Oil Co., Inc.*, 148 S.W.3d at 161. Recognizing the distinction between the jury's fact-finding duty on the reasonable and necessary prong, and the trial court's role in crafting a just and equitable award, the Court explained:

> There are times, such as this one, when the trial court determines that equity and justice preclude it from awarding the full amount of fees that the jury found to be reasonable and necessary. In this case, the trial judge necessarily concluded that it would not be equitable and just to award Ridge the full amount of attorney's fee, but that it would also be inequitable or unjust to award no attorney's fees even though the court had the discretion to do so. . . . Thus, we hold that Section 31.009's 'as are equitable and just' language cannot reasonably be construed to mean anything other than *the extent to which* such fees are equitable and just and, thus, authorizes an award of attorney's fees less than the amount found by a jury to be reasonable and necessary. [Emphasis in original].

*Ridge Oil Co., Inc.*, 148 S.W.3d at 162.

According to the opinion there was, "no indication in the record that the judge's decision was arbitrary or unreasonable," and the reduced fee award was upheld. *See Ridge Oil Co., Inc.*, 148 S.W.3d at 163.

Although the reasonableness and necessity issue was determined by stipulation of the parties in this case, rather than by a jury, we see little distinction between this case and the circumstances in *Ridge Oil Co., Inc.* As in *Ridge Oil Co., Inc.*, the reasonableness and necessity of the fees requested by the parties was not in dispute. The only issue remaining for the trial court to determine what award, if any, would be equitable and just. While the equities balanced

11

toward only a reduced award in *Ridge Oil Co., Inc.*, the Supreme Court recognized that, as a general matter, the court had the discretion to refuse to award fees, if an award of any amount would be inequitable and unjust. *See Ridge Oil Co., Inc.,* 148 S.W.3d at 162. Such is the circumstance we must consider here. Both implicitly, and according to the court's findings of fact and conclusions of law, the court determined that it would not be equitable or just to award attorney's fees to Approach.[5] As the Supreme Court concluded in *Ridge Oil Co., Inc.*, there is no indication from the record, including the trial court's findings, that the court's refusal to award fees was arbitrary or unreasonable. *See Ridge Oil Co., Inc.*, 148 S.W.3d at 163. Because Approach cannot demonstrate that the trial court abused its discretion, Issue One is overruled.

In Issues Two, Three, and Four, Approach identifies three grounds on which it relies to demonstrate that the award falls outside the limits of the court's discretion. Issue Two addresses what Approach characterizes as the trial court's determination that it "waived" its right to recover fees by failing to present evidence in the trial court prior to the first appeal. Issue Three contains Approach's argument that the fees in this case were not subject to segregation, and that the trial court erred by refusing to award the requested fee based on Approach's refusal to segregate. Issues Two and Three, also include challenges to the legal and factual sufficiency of the evidence supporting the relevant findings of fact or conclusions of law. Issue Four challenges the trial court's consideration of Approach's actions related to the mediation and settlement on the basis that such considerations were "outside the scope" of the remand, rendering the trial court's finding that Approach acted in bad faith inoperative as a basis to refuse to award fees. Similar to our conclusion in Issue One, we are not persuaded that these alternative

---

[5] Approach challenges the legal and factual sufficiency of the evidence supporting several of the court's fact-findings on appeal. The entity does not challenge any of the findings related to the court's conclusion that an award would not be equitable or just. In so noting, we express no opinion on the validity or potential outcome of such a challenge.

12

grounds, collectively or independently, demonstrate that the trial court abused its discretion.

First turning to the waiver argument presented in Issue Two, we disagree with Approach's characterization of the court's finding. Approach frames this argument in a way that would lead one to conclude that the trial court refused to award fees because Approach "waived" its right to recovery. Read in isolation, finding twenty-one could be construed to indicate that the court determined Approach's right to recovery had been waived, without regard to the requirements of the UDJA. The finding was not made in isolation, however, and pursuant to the abuse of discretion standard of review, this Court is charged to consider the record broadly with deference to the trial court's ruling. *See Bocquet*, 972 S.W.2d at 21.

Even if we limit our view of the record, and look only to the court's fact-findings, the context indicates that the "waiver" identified by the court was a waiver of an *opportunity* to present evidence, not "waiver" of a right to recovery. Within the language of finding twenty-one itself, the court first notes that Approach "waived its right to provide attorneys-fee evidence at trial," and then continues by noting that the entity also failed to "prove its attorneys' fees related to the issues appealed on remand." There is no indication of a cause-and-effect relationship between the two statements, and we see no reason to impose one. Approach's over-broad interpretation of finding twenty-one is not supported by the record, and cannot support a finding that the trial court abused its discretion in failing to award fees. In light of this conclusion, there is no need to address Approach's alternative challenge to the legal and factual sufficiency of the evidence supporting the finding. Issue Two is overruled.

In Issue Three, Approach contends that the trial court erroneously concluded that fee segregation was necessary in this case, and concluded that the court abused its discretion by refusing to award fees due to Approach's failure to segregate. As Approach explains, generally,

13

fee claimants are required to segregate attorney's fees between claims for which fees are recoverable, and claims for which they are not. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). A claimant is relieved of the duty to segregate only in circumstances where the same "discrete legal services advance both a recoverable and unrecoverable claim." *See Chapa*, 212 S.W.3d at 313-14. Under such circumstances, the fees are considered to be too "intertwined" for segregation to be possible. *See Chapa*, 212 S.W.3d at 313-14. Whether or not segregation is necessary is a question of law, subject to *de novo* review. *Penhollow Custom Homes , LLC v. Kim*, 320 S.W.3d 366, 374 (Tex.App.--El Paso 2010, no pet.).

While we do not disagree with Approach's statement of the standards for segregation, we question how the issue is related to the court's determination that an award would not be just and equitable. Segregation is not an equitable issue. It is related to the amount of attorney's fees which are recoverable by a party. *See Chapa*, 212 S.W.3d at 313-14. It is a tool used to separate fees expended to advance claims for which recovery of attorney's fees is not authorized, from those that are permitted pursuant to statute or contract. *See id.* at 311, 313-14. Approach has not provided this Court with citation to authority, and we are unaware of Texas case law which applies the segregation standard to support or defeat a trial court's decision under the "equitable and just" standard.

The central issue here is the court's decision to refuse to award fees at all. Because segregation is an issue directed toward the amount of fees to be recovered, it has little or no impact on the trial court's determination that the only just and equitable resolution was to refuse Approach's request for fees. Given the independence of the two issues, there is no need to address Approach's assertion that segregation was not appropriate in this case. In addition, in

14

light of our analysis it is not necessary to address Approach's legal and factual sufficiency challenge to the trial court's conclusion that segregation was required in this case. Issue Three is overruled.

In Issue Four, Approach contends that the trial court abused its discretion by considering issues which were outside the "scope of the remand," and by using findings related to those issues to refuse to award fees. Ms. Clayton presented a great deal of evidence as to Approach's actions prior to, and during the appeal in *Clayton I*, as well as testimony demonstrating the nature of the entity's use of her property. During the presentation of evidence, only counsel for the Thompson defendants objected to Ms. Clayton's testimony on the basis that it was irrelevant to the issues the court was charged to consider on remand. There is nothing in the record indicating that Approach objected to the trial court's consideration of the evidence proffered by Ms. Clayton during the hearing, or in its motion for recovery of attorney's fees.

To preserve a complaint for appellate review the complaining party must raise a valid, specific, and timely objection in the trial court. *See* TEX.R.APP.P. 33.1(a); *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 868 (Tex. 2007). Failure to raise a complaint in the trial court waives appellate review of the issue. *See McIntyre v. Wilson*, 50 S.W.3d 674, 688 (Tex.App.--Dallas 2001, pet. denied). Because this argument was not presented in the trial court, it has not been preserved for consideration by this Court. Issue Four is overruled.

With regard to Issue Five, according to the "ISSUES PRESENTED" page of Approach's brief, this issue challenges the legal and factual sufficiency of the evidence supporting the court's findings, "on issues on which Clayton had the burden of proof," and asserts that, any adverse findings on which Approach had the burden of proof, "are not supported under the matter of law and great weight and preponderance standards." There is no further discussion of this issue in

15

the brief however.  Without further analysis, we will overrule Issue Five for lack of briefing.  *See* TEX.R.APP.P. 38.1(i).

In Issue Six, Approach notes that there is a discrepancy between the cause number originally assigned to the case by the trial court (No. 05-09-06794), and the number shown on the court's final judgment on attorney's fees (No. 02-09-06794).  Approach requests that this Court reform the judgment to reflect the correct cause number.  *See* TEX.R.APP.P. 43.2(b).  Ms. Clayton has not addressed this issue in her brief.  Pursuant to Texas Rule of Appellate Procedure 43.2, the judgment will be reformed to state the correct cause number; "05-09-06794."  Issue Six is sustained.

## CONCLUSION

Having overruled Issues One through Five, and sustained Issue Six, the trial court's judgment is affirmed as reformed.


January 11, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Antcliff, J., and Chew, C.J. (Senior)
Chew, C.J. (Senior)(Sitting by Assignment)

16