COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
|---|---|---|
| YAGHOUB "JACOB" KOHANNIM, | | No. 08-11-00155-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 236th District Court |
| | § | |
| PARVANEH KATOLI, | | of Tarrant County, Texas |
| | § | |
| Appellee. | | (TC # 236-217944-06) |
| | § | |

## **O P I N I O N**

This appeal arises from a money judgment awarded in post-divorce litigation between Parvaneh Katoli and her former husband's business partner, Yaghoub "Jacob" Kohannim. We affirm in part and reverse in part.

## **FACTUAL SUMMARY**

In 1985, Jacob Kohannim and Mansour "Mike" Khosravikatoli formed a Texas corporation, Santores, Inc., for the purpose of owning and operating a restaurant known as Marsala in Arlington, Texas. The restaurant was located in a small strip shopping center. Mike was married to Parvaneh Katoli[1] when he and Jacob formed Santores and opened Marsala. Jacob and Mike were equal shareholders in Santores.

---

[1] Parvaneh Katoli's first name is misspelled in several portions of the record, including the trial court's findings. Unless indicated otherwise, the opinion will refer to her as Parvaneh even if the record reflects a different spelling.

In 1996, Jacob and Mike decided to purchase the real property on which Marsala was located together with the buildings, equipment, and fixtures located on the property. On May 2, 1996, Jacob and Mike formed a new company, 360 Center LLC to acquire the property. Pursuant to the Articles of Organization, Jacob and Mike each owned 50% of 360 Center and were the managers. Jacob testified at trial that Mike had knowledge of 360 Center's activities but Jacob managed the company alone.

By 2001, Mike was experiencing significant personal difficulties which included irrational behavior and severe abuse of alcohol and cocaine. As a result of these difficulties, Mike lacked the capacity to participate in the management of the company. He also had serious marital problems and in July of 2001, Parvaneh and Mike separated. After learning that Mike and Parvaneh would likely divorce, Jacob hired an attorney to draft a "Members Agreement" for Mike and Jacob, as the interest-holders of 360 Center. Mike and Jacob signed the Members Agreement on December 6, 2001. It restricted Mike and Jacob from transferring their interest in 360 Center without first giving fifteen days' notice to the Company and other interest-holder. Upon receiving notice, the other interest-holder had ten days to approve the transfer. If the transfer was approved, the other interest-holder had a preferential right to purchase all or any portion of the offered interest at the purchase price and on the terms specified in the transfer notice. The Members Agreement also contained provisions applicable to transfer of an interest-holder's interest as a result of divorce. In the event an interest-holder's interest was transferred to a spouse in the context of divorce proceedings, the Company and the other interest-holder had the right to purchase that interest. The Members Agreement also named Jacob and Mike the managers of 360 Center for life.

Parvaneh filed for divorce on February 24, 2003. On May 23, 2003, the 322nd District

Court in Tarrant County entered agreed temporary orders prohibiting Mike and Parvaneh from transferring assets. Jacob knew that the divorce petition had been filed and that the court had issued an order prohibiting Mike from transferring assets. In June or July of 2003, Jacob agreed to purchase 5% of Mike's interest in 360 Center for $16,500 in six installments. Jacob made the first payment on July 2, 2003 and the final payment on December 31, 2003. The 322nd District Court signed the final decree of divorce on March 17, 2005. With regard to Mike's purported transfer of 5% interest in 360 Center to Jacob, the decree provides:

> The Court further finds that Respondent attempted to transfer his interest in community property in violation of a court ordered injunction issued by this Court, and as a result of such violation, any such purported transfer of interest is void for all purposes as it pertains to the parties to this suit and matters over which this Court has jurisdiction and power.

The district court awarded Parvaneh "[o]ne hundred percent (100%) of the husband's interest in 360 Center, LLC, a Texas limited liability company, which interest is equivalent to a fifty percent (50%) interest in such company." The decree required Mike to execute and deliver to Parvaneh's attorney a stock transfer certificate and/or assignment of interest.

Before the divorce decree was entered, Jacob closed one of the 360 Center bank accounts and a check for $160,000 made payable to 360 Center LLC was issued on February 26, 2005. Over a month later, and after the final decree had been entered, Jacob endorsed the check and deposited it into Marsala's bank account. The financial records of 360 Center identify the $160,000 transaction as a "payment to owner."

On April 11, 2005, Parvaneh's attorney forwarded the pertinent pages of the divorce decree to Jacob's attorney along a blank stock power executed by Mike. In the same letter, Parvaneh's attorney demanded a meeting with Jacob for an immediate accounting and to discuss ongoing management of the company. The letter specifically raised the issue about the $160,000

payment to Jacob. The following month, Jacob advised Parvaneh that he intended to start the process of determining the value of 360 Center pursuant to Article III of the Members Agreement.

It is undisputed that Jacob refused to consent to Parvaneh becoming a member of 360 Center. On December 21, 2005, Jacob's attorneys informed Parvaneh by letter that she was not a member unless Jacob consented and she therefore had no right to vote at an upcoming meeting on the issue of Jacob's compensation. The letter further stated that Jacob would vote his 55% interest in favor of a $50,000 payment to him as compensation for his services in 2005 and a check would subsequently be issued to him. Jacob received the $50,000 payment over Parvaneh's protests.

On May 15, 2006, Parvaneh filed suit against Jacob and 360 Center. She sought a declaration of her rights with respect to 360 Center and the Members Agreement. Her petition included claims based on constructive fraud, breach of fiduciary duty, oppression, waste and misappropriation of assets, gross mismanagement and abuse of control, and unjust enrichment. Parvaneh also sought a declaration with respect to the validity of the Members Agreement. More specifically, she sought declarations that the Members Agreement was not valid, it was not binding on her, the purported transfer from Mike to Jacob of a 5% interest in 360 Center was void, and she owns 50% of 360 Center. Parvaneh also requested that a receiver be appointed to conserve the properties, assets, and rights of 360 Center. Finally, Parvaneh sought actual damages, punitive damages, and attorney's fees. Jacob generally denied Parvaneh's claims and asserted counterclaims against her. In addition to seeking a declaration that Parvaneh was bound by the Members Agreement, Jacob sought damages for breach of that agreement and for specific performance.

The trial court appointed a receiver for 360 Center and ordered the receiver to sell its assets. The receiver placed a value of $1,250,000 on 360 Center's assets but recommended that the trial court approve Jacob's offer to purchase the assets for $1,000,000.13. The trial court rejected Jacob's offer because the appraisal did not include a cell phone tower and billboard tower on the property. The court ordered the receiver to list the property and subsequently approved a sale for $1,300,100.

The parties tried the case to the bench for four days in June 2010. In addition to testimony, numerous and voluminous exhibits were admitted. The trial judge did not immediately rule at the conclusion of the trial and took the case under advisement. Then on December 9, 2010, the court issued a letter ruling:

1) The declaratory relief requested by Parveneh [sic] Katoli is granted.

2) The $54,500 judgment requested by the Receiver is granted.

3) All relief requested by Yaghoub 'Jacob' Kohannim is denied.

4) All relief requested by Mansour 'Mike' Khosravikatoli is denied.

The court requested that Parvaneh's attorney submit proof of attorney's fees and directed the receiver to furnish the amount of funds on hand to the court by December 13, 2010. On February 10, 2011, the court sent a second letter to the parties setting forth the court's ruling in more detail.

The trial court entered a final judgment on February 16, 2011. The court found that: (1) 360 Center has $1,445,969.26 in assets, consisting of $1,393,469.26 in cash held by the receiver and a rent judgment for $52,500; and (2) Jacob and Parvaneh each hold a 50% beneficial interest in the assets ($722,984.63 each). The court allocated the assets as follows: (1) $670,484.63 in cash and the $52,500 rent judgment to Parvaneh; and (2) $722,984.63 in cash to Jacob. Based

upon the court's findings that Parvaneh had been damaged by Jacob's wrongful acts and omissions and that Jacob had acted with malice and intent to defraud, the court determined that the value of Parvaneh's interest in 360 Center would have been $1,141,745.69 had it not been for Jacob's wrongful acts and omissions. The court awarded Parvaneh the difference in value, $418,761.06. Additionally, the court awarded to Parvaneh punitive damages in the sum of $150,000 and attorney's fees of $165,533.93, plus conditional awards in the event of appeal. The judgment gave Jacob a credit of $2,400 previously deposited into the trust account of Parvaneh's attorneys.

The receiver, in accordance with the final judgment, transferred a rent judgment to Parvaneh and deposited $670,484.63 into the registry of the court for her benefit. *See Yaghoub Kohannim v. Parvaneh Katoli*, No. 08-11-00155-CV, 2011 WL 2586779 at *2 (Tex.App.--El Paso June 29, 2011, order)(memorandum opinion). The receiver also deposited the sum of $720,059.88 into the registry for the benefit of Jacob. *Id.* After filing notice of appeal, Jacob filed a notice of deposit in lieu of supersedeas bond, stating his intent to supersede the judgment with the $720,059.88 that had been deposited by the receiver into the court's registry. *Id.* Parvaneh filed a motion for release of funds seeking to obtain the entire $1,390,544.51 in the court's registry. *Id.* at *2-3. We concluded that Jacob was not required to supersede the portion of the judgment allocating $722,984.63 of 360 Center's assets to Parvaneh because Jacob had disclaimed any intent to appeal this portion of the judgment and he had agreed to let Parvaneh recover these funds immediately. *Id.* at *4. Jacob's notice of cash deposit in lieu of supersedeas was sufficient to supersede the compensatory damages in the amount of $418,761.06, attorney's fees in the amount of $165,533.93, and post-judgment interest in the amount of $26,694.75. *See id.* at *4.

Jacob raises eight issues on appeal challenging the trial court's findings made on Parvaneh's claims, and the awards of actual damages, punitive damages, and attorney's fees. He expressly does not challenge the trial court's 50/50 allocation of 360 Center's assets.

## VALIDITY OF THE CORRECTED JUDGMENT

Jacob raises an issue at the end of his brief regarding the validity of the corrected judgment. Since our resolution of this issue could have an impact on other issues, we will address it first. In Issue Eight, Jacob contends that the corrected final judgment, which granted declaratory relief in Parvaneh's favor is void.

On December 9, 2010, the trial court sent a letter to the parties announcing the substance of its rulings. That letter expressly stated that the court was granting the declaratory relief requested by Parvaneh and it denied all relief requested by Jacob. Jacob's counterclaim included a request for declaratory relief. The final judgment of February 16, 2011 did not include the declaratory relief requested by Parvaneh, but did award attorney's fees to her. The Declaratory Judgment Act provided the only basis for an award of attorney's fees to Parvaneh. Parvaneh later filed a motion for judgment *nunc pro tunc* which the trial court granted on September 19, 2011. The trial court entered a "Corrected Final Judgment" which specifically granted the declaratory relief requested Parvaneh as follows:

1. The Members Agreement dated December 6, 2001 is not valid.

2. The Members Agreement dated December 6, 2001 is not applicable to or binding upon Parvaneh.

3. The purported transfer of a 5% interest in 360 Center, LLC, from Mike to Jacob is void.

4. Parvaneh owns 50% of 360 Center, LLC.

While the order granting Parvaneh's motion for a judgment *nunc pro tunc* was signed on

September 19, 2011, the corrected final judgment reflects that it was signed on February 16, 2011 after the court's plenary power had expired.

A *nunc pro tunc* judgment allows the trial court to correct clerical errors in the judgment after the court's plenary power has expired. *Daniels v. Commission for Lawyer Discipline*, 142 S.W.3d 565, 572 (Tex.App.--Texarkana 2004, no pet.); TEX.R.CIV.P. 316, 329b(f). A clerical error does not result from judicial reasoning or determination. *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986). It is a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered. *Barton v. Gillespie*, 178 S.W.3d 121, 126 (Tex.App.--Houston [1st Dist.] 2005, no pet.), *citing Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986). Conversely, a judicial error arises from a mistake of law or fact that requires judicial reasoning to correct. *Barton*, 178 S.W.3d at 126. Thus, a judicial error occurs in the rendering, as opposed to the entering, of a judgment. *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986). If the court attempts to correct a judicial mistake by signing a judgment *nunc pro tunc* after the expiration of its plenary power, that judgment is void. *Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex. 1973); *Daniels*, 142 S.W.3d at 572; *Barton*, 178 S.W.3d at 126.

Rendition of a judgment occurs when the trial court's decision is officially announced either by a signed memorandum filed with the clerk of the court or orally in open court. *Barton*, 178 S.W.3d at 126; *In re Fuselier*, 56 S.W.3d 265, 268 (Tex.App.--Houston [1st Dist.] 2001, orig. proceeding). In the December 9, 2010 letter, the trial court stated that "[t]he declaratory relief requested by Parveneh [sic] Katoli is granted." This letter was filed with the trial court clerk. We conclude that this letter constituted a rendition of judgment with respect to Parvaneh's request for declaratory relief. The trial court did not, however, include the declaratory relief in its final judgment signed on February 16, 2011. We conclude that the corrected final judgment

- 8 -

corrected this clerical error and is not void.

Jacob also complains that the corrected final judgment is voidable because the trial court "back-dated" it. A judgment *nunc pro tunc* does not disturb the initial judgment rendered by the trial court; it merely brings the court records into conformity with it. *Daniels*, 142 S.W.3d at 572. Accordingly, a judgment *nunc pro tunc*, although signed later, relates back to the date of the original judgment and is effective as of the earlier date. *Id*. at 573. Rule 306a(2) states as follows:

> 2. Date to be shown. Judges, attorneys and clerks are directed to use their best efforts to cause all judgments, decisions and orders of any kind to be reduced to writing and signed by the trial judge with the date of signing stated therein. If the date of signing is not recited in the judgment or order, it may be shown in the record by a certificate of the judge or otherwise; *provided, however, that the absence of a showing of the date in the record shall not invalidate any judgment or order.* [Emphasis added].

TEX.R.CIV.P. 306a(2). While we agree with Jacob that the trial court should have indicated the actual date that the court signed the corrected final judgment, the judgment related back to the original judgment and is effective as of February 16, 2011. Further, the error in the recitation of the date does not invalidate the judgment. TEX.R.CIV.P. 306a(2). Issue Eight is overruled.

## BREACH OF FIDUCIARY DUTY

Parvaneh alleged several causes of action against Jacob and the trial court found in her favor on claims of breach of fiduciary duty, constructive fraud, oppression, and unjust enrichment. We begin by reviewing Issue One which challenges the legal sufficiency of the evidence supporting the trial court's findings that Jacob breached his fiduciary duty owed to 360 Center and Parvaneh. Her first amended petition alleged that she was suing Jacob for constructive fraud and breach of fiduciary duty.

*Elements of Breach of Fiduciary Duty*

The elements of a claim for breach of fiduciary duty are: (1) the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in either (a) an injury to the plaintiff; or (b) a benefit to the defendant. *Godfrey v. Security Service Federal Credit Union*, 356 S.W.3d 720, 727 (Tex.App.-- El Paso 2011, no pet.); *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex.App.--Fort Worth 2011, no pet.).

*No Findings*

Jacob contends that Parvaneh cannot recover on her claim for breach of fiduciary duty because the trial court made no fact findings that a fiduciary relationship existed between Jacob and Parvaneh, or that Jacob breached a fiduciary duty to Parvaneh. Fiduciary duties arise either from certain formal relationships or from the existence of an informal or confidential relationship between the parties. *See Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005); *Haut v. Green Cafe Management, Inc.*, 376 S.W.3d 171, 186 (Tex.App.--Houston [14th Dist.] 2012, no pet.). Fiduciary duties arise as a matter of law in certain formal relationships such as that of attorney and client. *Meyer*, 167 S.W.3d at 330; *Haut*, 376 S.W.3d at 186. Although the existence of facts giving rise to a fiduciary duty is a question of fact, the issue of whether those facts give rise to a formal fiduciary relationship is a question of law. *Environmental Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 627 (Tex.App.--Houston [14th Dist.] 2009, pet. denied). Texas courts have also recognized that certain informal relationships may give rise to a fiduciary duty. *Crim Truck & Tractor Co. v. Navistar International Transportation Corporation*, 823 S.W.2d 591, 594 (Tex. 1992). The existence of an informal, confidential relationship is usually a question of fact. *Id.*

When findings of fact are filed by the trial court, they form the basis of the judgment

upon all grounds of recovery and of defense embraced therein. TEX.R.CIV.P. 299. The judgment may not be supported on appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment. *Id.*

Parvaneh requested that the trial court make numerous findings of fact and conclusions of law. Proposed conclusions of law numbers 3 and 4 read as follows:

3. Jacob owed a fiduciary duty to Parvenah [sic].

4. Jacob breached his fiduciary duty to Parvenah [sic].

In the proposed findings of fact, she asked the court to find that: "All conclusions of law set forth below that contain findings of fact are hereby adopted as findings of fact." The trial court concluded that Jacob owed a fiduciary duty to 360 Center and breached that duty, but did not make the requested findings that Jacob owed a fiduciary duty to Parvaneh or that he breached that duty. After judgment is rendered in a bench trial, either party may request findings of fact and conclusions of law. *See* TEX.R.CIV.P. 296; *Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 253 (Tex.App.--Houston [14th Dist.] 1999, pet. denied). If the appellee drafts proposed findings of fact and conclusions of law that set forth every element of his ground of recovery or defense, and the trial court deletes one of the elements, the omitted element cannot later be supplied on appeal by implication. *Vickery*, 5 S.W.3d at 253. It is apparent from the record that the trial court deliberately omitted these two elements, existence of a fiduciary duty and breach, because the elements were requested and refused. In the absence of these findings, Parvaneh cannot recover on her breach of fiduciary duty cause of action. Issue One is sustained.

**FRAUD**

In Issue Two, Jacob complains that there is no evidence to support the trial court's conclusion that he committed actual fraud or constructive fraud. He also argues that Parvaneh did not plead a fraud cause of action in her first amended petition and the issue was not tried by consent. We will address the latter issue first.

*Failure to Plead Actual Fraud*

Jacob is correct that Parvaneh did not plead a cause of action for actual fraud, but the trial court found that Jacob committed fraud against Parvaneh. A trial court cannot enter judgment on a theory of recovery not sufficiently set forth in the pleadings or otherwise tried by consent. *Hartford Fire Insurance Company v. C. Springs 300*, *Ltd.*, 287 S.W.3d 771, 779 (Tex.App.--Houston [1st Dist.] 2009, pet. denied); *see also* TEX.R.CIV.P. 301 (providing that the "judgment of the court shall conform to the pleadings"); *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979)(judgment must be based upon pleadings, and plaintiff may not obtain favorable judgment on unpleaded cause of action in absence of trial by consent). When issues not raised by the pleadings are tried by consent, they must be treated in all respects as if they had been raised in the pleadings. TEX.R.CIV.P. 67; *Phillips v. Phillips*, 296 S.W.3d 656, 670 (Tex.App.--El Paso 2009, pet. denied); *Gutierrez v. Gutierrez*, 86 S.W.3d 721, 729 (Tex.App.--El Paso 2002, no pet.). This rule is limited to those exceptional cases where it clearly appears from the record as a whole that the parties tried an unpled issue by consent. *Phillips*, 296 S.W.3d at 670; *Gutierrez*, 86 S.W.3d at 729. It is not intended to establish a general rule of practice; it should be applied with care and never in a doubtful situation. *Phillips*, 296 S.W.3d at 670; *Marrs and Smith Partnership v. D.K. Boyd Oil and Gas Co., Inc.*, 223 S.W.3d 1, 18 (Tex.App.--El Paso 2005, pet. denied).

Trial by consent "applies only where it appears from the record that the issue was actually tried, although not pleaded." *Marrs and Smith Partnership*, 223 S.W.3d at 18, *quoting Johnston v. McKinney American, Inc*., 9 S.W.3d 271, 281 (Tex.App.--Houston [14th Dist.] 1999, pet. denied). To determine whether the issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Phillips*, 296 S.W.3d at 670; *Marrs and Smith Partnership*, 223 S.W.3d at 18. When evidence relevant to both a pled and an unpled issue has been admitted without objection, the doctrine of trial by consent should not be applied unless clearly warranted. *Marrs and Smith Partnership*, 223 S.W.3d at 18-19; *Johnston v. McKinney American, Inc*., 9 S.W.3d 271, 281 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). A party's unpled issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating that both parties understood the issue was in the case, and the other party failed to make an appropriate complaint. *Hartford Fire Insurance, Co.,* 87 S.W.3d at 780; *Johnson v. Structured Asset Services., LLC*, 148 S.W.3d 711, 719 (Tex.App.--Dallas 2004, no pet.).

The record reflects that Parvaneh relied on the same evidence to prove the different causes of action she had pled as well as her claim for punitive damages which required proof of malice or intent to defraud. We are unable to find evidence indicating that the issue of actual fraud was tried by consent. Consequently, the trial court could not enter judgment on this theory of recovery.

### Constructive Fraud

Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests. *Sprick v. Sprick*, 25 S.W.3d 7, 15 (Tex.App.--El Paso

1999, pet. denied)(McClure J., concurring); *see Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964)(a person engages in constructive fraud when he breaches a legal or equitable duty which the law declares fraudulent because it violates a fiduciary relationship). A claim for constructive fraud is premised upon the existence of a fiduciary relationship and a breach of the duty created by that relationship. *See Crim Truck & Tractor Company*, 823 S.W.2d at 594; *Archer*, 390 S.W.2d at 740.Parvaneh does not identify the basis for her claim that Jacob owes her some fiduciary duty, but it appears she is relying on the same fiduciary duty and breach addressed in Issue One.

As we discussed in that issue, the trial court refused to find that Jacob owed Parvaneh a fiduciary duty and refused to find that he breached a fiduciary duty owed to her. Consequently, Parvaneh cannot recover on her constructive fraud cause of action. Issue Two is sustained.

## OPPRESSION

In Issue Three, Jacob challenges the legal sufficiency of the evidence supporting the trial court's finding that he oppressed Parvaneh's rights as a co-owner of 360 Center. Parvaneh alleged a cause of action for oppression in her first amended petition. She claimed that Jacob had treated the company as an extension of himself to the exclusion of Parvaneh's rights and his treatment of her had been so harsh and burdensome as to visibly depart from ordinary standards of fair dealing. The trial court found in Parvaneh's favor on this cause of action and made several fact-findings in support of its conclusion that Jacob had committed oppression against Parvaneh.

### *Standard of Review*

In a cause of action for shareholder oppression or oppressive conduct, the fact finder determines what acts occurred. *Ritchie v. Rupe,* 339 S.W.3d 275, 289 (Tex.App.--Dallas 2011,

pet. denied).  Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon questions and are reviewed for legal and factual sufficiency of the evidence by the same standards.  *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Tierra Sol Joint Venture v. City of El Paso*, 311 S.W.3d 492, 498 (Tex.App.--El Paso 2009, no pet.).  However, the findings are not conclusive where, as here, a complete reporter's record appears in the record.  *Tierra Sol*, 311 S.W.3d at 498.  We review *de novo* whether the trial court properly concluded that there was shareholder oppression, because it constitutes a legal conclusion.  *Ritchie*, 339 S.W.3d at 289; *Cardiac Perfusion Services, Inc. v. Hughes*, 380 S.W.3d 198, 202 (Tex.App.--Dallas 2012, pet. filed).

An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows:  (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact.  *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Tierra Sol*, 311 S.W.3d at 498.  In conducting our review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it.  *City of Keller*, 168 S.W.3d at 822; *Tierra Sol*, 311 S.W.3d at 498.  Even if evidence is undisputed, it is the province of the trier of fact to draw from it whatever inferences it wishes so long as more than one inference is possible.  *City of Keller*, 168 S.W.3d at 821.  But if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it.  *Id*.  We are also mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony.  *Id*. at 819.  When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts.  *Id*. at 820.  In every

- 15 -

circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. *Id*. at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the trier of fact must be allowed to do so. *Id*. at 822. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the trier-of-fact. *Id.* The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id*. at 827.

*Oppression Action is Available to Parvaneh*

Having conceded that Parvaneh owned a 50% interest in 360 Center, Jacob first contends that she cannot maintain an oppression action because such a claim can only be asserted by a minority shareholder or member. A member oppression claim may exist when: (1) a majority shareholder's conduct substantially defeats the minority's expectations that objectively viewed, were both reasonable under the circumstances and central to the minority shareholder's decision to join the venture; or (2) burdensome, harsh, or wrongful conduct, a lack of probity and fair dealing in the company's affairs to the prejudice of some members, or a visible departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely. *Gonzalez v. Greyhound Lines Inc.*, 181 S.W.3d 386, 392 n.5 (Tex.App.--El Paso 2005, pet. denied); *Pinnacle Data Services, Inc. v. Gillen*, 104 S.W.3d 188, 196 (Tex.App.--Texarkana 2003, no pet.); *see also Davis v. Sheerin*, 754 S.W.2d 375, 381-82 (Tex.App.--Houston [1st Dist.] 1988, writ denied); *see also* TEX.BUS.ORG.CODE ANN. § 11.404 (West 2012)(court may appoint a receiver for the assets and business of a corporation when the acts of the directors or those in control of the corporation are illegal,

oppressive, or fraudulent). The language of Section 11.404 indicates that an oppression action can be directed at the directors or "those in control" of the entity. *See Ritchie*, 339 S.W.3d at 290 (rejecting argument that shareholder oppression can only be brought by minority shareholder).

*No Right to Participate in Management*

Jacob also argues there is no evidence to support the trial court's determination that he oppressed Parvaneh's rights by refusing to allow her to participate in the management of 360 Center given that she was not a member. Membership interest in a limited liability company is personal property. TEX.BUS.ORG.CODE ANN. § 101.106(a)(West 2012). It may also be community property. *See* TEX.BUS.ORG.CODE ANN. § 101.106(a-1). It is undisputed that Mike's 50% membership interest in 360 Center was community property and the 322nd District Court awarded the entirety of that membership interest to Parvaneh in the divorce decree. Mike executed a document transferring and assigning the membership interest to Parvaneh as required by the divorce decree. According to the Texas Business Organizations Code, the assignment of that 50% membership interest to Parvaneh did not include the right to participate in the management of 360 Center. Section 101.106(a-2) of the Business Organizations Code specifically provides that: "A member's right to participate in the management and conduct of the business of the limited liability company is not community property." TEX.BUS.ORG.CODE ANN. § 101.106(a-2). An assignment of a membership interest in a limited liability company does not entitle the assignee to participate in the management and affairs of the company, become a member of the company, or exercise any rights of a member of the company. TEX.BUS.ORG.CODE ANN. § 101.108(b). A person who is assigned a membership interest in a limited liability company is "entitled to become a member of the company on the approval of all of the company's members." TEX.BUS.ORG.CODE ANN. § 101.109(b). Because Jacob has never

consented to Parvaneh becoming a member of 360 Center, she did not have a right to participate in the management of the company.

*Right to Distribution of Profits*

Jacob next contends there is no evidence to support the trial court's determination that he oppressed Parvaneh's rights by failing to make distributions to her. Regarding the distributions of profits, Article V of 360 Center's Regulations provides for the distribution of "available cash" to members quarterly provided that the available cash is not needed for a reasonable working capital reserve. Article V directly conflicts with Section 101.109(a) of the Business Organizations Code which addresses the rights and duties of an assignee of a membership interest before the assignee becomes a member. TEX.BUS.ORG.CODE ANN. § 101.109(a)(1), (2). Section 101.109(a)(1) and (a)(2) provides that a person who is assigned a membership interest in a limited liability company is entitled to:

> (1) receive any allocation of income, gain, loss, deduction, credit, or a similar item that the assignor is entitled to receive to the extent the allocation of the item is assigned;

> (2) receive any distribution the assignor is entitled to receive to the extent the distribution is assigned.

Given that the 322nd District Court awarded Parvaneh the entire community interest in 360 Center, she did indeed have a right to receive distributions. The trial court found that Jacob paid himself $100,000 for management services that were not performed and failed to make any profit distributions to Mike or Parvaneh even though more than $250,000 in undistributed profit had accumulated in the company's accounts since the mortgage on the property had been paid off in February 2007. We conclude that more than a scintilla of evidence supports the trial court's finding that Jacob failed to make profit distributions to Parvaneh. We also agree with the trial court's conclusion that the established facts demonstrated Jacob engaged in wrongful conduct

and exhibited a lack of fair dealing in the company's affairs to the prejudice of Parvaneh.  Issue Three is overruled.

## UNJUST ENRICHMENT

In Issue Four, Jacob contends that there is no evidence supporting the trial court's findings on the unjust enrichment cause of action.  Jacob also argues that the unjust enrichment claim belongs to 360 Center, not Parvaneh.

Unjust enrichment is an equitable principle requiring one who receives benefits unjustly to make restitution for those benefits.  *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex.App.--San Antonio 2004, pet. denied); *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex.App.--Corpus Christi 2002, pet. denied).  A plaintiff recovers under an unjust enrichment theory if a defendant obtains a benefit from the plaintiff "by fraud, duress, or the taking of an undue advantage."  *Heldenfels Brothers, Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Walker v. Cotter Properties, Inc.*, 181 S.W.3d 895, 900 (Tex.App.--Dallas 2006, no pet.).  "Unjust enrichment demands restitution when a party receiving property or benefits would be unjustly enriched if it were permitted to retain the property or benefits at the expense of another."  *Heldenfels Brothers*, 832 S.W.2d at 43.

The trial court found that Jacob wrongfully utilized funds and assets of 360 Center for his own use and benefit and he unilaterally obligated 360 Center to pay at least $100,000 to himself for management services that either were not performed or were performed in a manner that damaged 360 Center.  A claim for unjust enrichment based on these facts would belong to 360 Center, not Parvaneh.  *See Wingate v. Hajdik*, 795 S.W.2d 717, 719-20 (Tex. 1990)(claim that a shareholder misappropriated corporation's assets belonged to the corporation, rather than another shareholder; individual stockholders have no separate and independent right of action for injuries

suffered by the corporation which merely result in the depreciation of the value of their stock). Issue Four is sustained.

## DAMAGE AWARDS

In Issue Five, Jacob challenges the legal sufficiency of the evidence supporting the actual and punitive damage awards. We pause to repeat that the only viable cause of action supporting a damage award is shareholder/member oppression. We disagree with Jacob that the standard of review is limited to a traditional sufficiency analysis. The statute authorizing a cause of action for oppression is now found in Section 11.404 of the Texas Business Organization Code. "The statute authorizes the court to fashion an equitable remedy if the actions of those in control of a corporation are illegal, oppressive, or fraudulent. *Argo Data Resource Corporation v. Shagrithaya*, 380 S.W.3d 249, 265 (Tex.App.--Dallas 2012, pet. filed). The expediency, necessity, or propriety of equitable relief as found by a trial court is reviewed for an abuse of discretion. *Ritchie*, 339 S.W.3d at 285, *citing Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428-29 (Tex. 2008). A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules or principles. *Id., citing Downer v. Aquamarine Marine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

We have repeatedly held that once it has been determined that the abuse of discretion standard applies, an appellate court should engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? *Knight v. Knight,* 131 S.W.3d 535, 539 (Tex.App.--El Paso 2004, no pet.); *Sandone v. Miller-Sandone,* 116 S.W.3d 204, 206 (Tex.App.--El Paso 2003, no pet.); *Lindsey v. Lindsey,* 965 S.W.2d 589, 591 (Tex.App.--El Paso 1998, no pet.). The traditional sufficiency review comes into play with regard to the first question; however, our

inquiry cannot stop there. We must proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable.

*Actual Damages*

The trial court calculated Parvaneh's damages by first determining the value of 360 Center on March 17, 2005 and adding the $160,000 that Jacob had taken from the 360 Center bank account and deposited in a Santores bank account. Jacob's March 17, 2005 appraisal gave 360 Center a value of $1,526,956 and the addition of $160,000 increased its value to $1,686,956. Parvaneh's 50% interest on March 17, 2005 was worth $843,478. The court found that Parvaneh was entitled to equitable pre-judgment interest in the amount of $298,267.69. The court added the equitable interest to the value of Parvaneh's 50% interest for a total value of $1,141,745.69 ($843,478.00 plus $298,267.69) on March 17, 2005. The actual value of 360 Center on February 8, 2011 was $1,445,969.26 so the value of Parvaneh's interest on that date was $722,984.63. The court concluded that actual damages consisted of the difference between the value of Parvaneh's interest on February 8, 2011 and the value of her interest on March 17, 2005, which is $418,761.06.

Jacob first argues that the trial court erred by adding $160,000 to the total value of 360 Center as of March 17, 2005 because it was a legitimate loan payment and any claim to recover that money was owned by the receiver for 360 Center. The trial court rejected that theory and found that 360 Center did not owe any money to Santores. When Jacob removed these funds from 360 Center and transferred the money to Santores, he reduced the value of Parvaneh's 50% interest. Consequently, the trial court did not err by adding the amount of $160,000 back into the value of 360 Center.

Jacob also maintains that the Members Agreement required that any valuation of 360 Center be done as of the date the divorce petition was filed, which was February 24, 2003. The trial court determined that the Members Agreement is inapplicable to Parvaneh. Assuming that the Members Agreement is applicable, it is not enforceable because 360 Center and Jacob did not comply with its provisions. Article 4.1(e) authorized 360 Center to intervene in the divorce proceeding for the purpose of enforcing the company's and interest-holders' rights under Article 4.1(e) but it did not do so. This decision was in Jacob's sole control because Mike had agreed to the company's intervention.

Jacob next argues that Article 6.1(g) of 360 Center's Regulations provides that the valuation of Parvaneh's interest must be based on "book value." Article 6.1 addresses death, dissolution, retirement, or bankruptcy of a member. If any event occurs which terminates the continued membership of a member, that member can demand the return of his interest. In such a case, the company or remaining members must purchase the former member's interest to avoid dissolution of the company. The former member's interest must be valued according to its book value for federal income tax purposes, but a party to a purchase of the interest who deems the value to vary from fair market value by more than 20% may request an appraisal. Article 6.1(g) does not address how damages are calculated in a lawsuit where oppression is alleged. We conclude that Article 6.1(g) is inapplicable to determining the proper amount of actual damages. Our decision is informed by the analysis in *Cardiac Perfusion Services, Inc. v. Hughes*, 380 S.W.3d 198, 202 (Tex.App.--Dallas 2012, pet. filed). There, the appellants argued that the trial court erred when it ordered them to redeem Hughes' stock at "fair value" rather than book value, as required by the buy-sell agreement. *Id.* at 202. The crux of their argument was that the equitable doctrine of shareholder oppression cannot nullify the terms of a buy-sell agreement.

- 22 -

The appellate court disagreed.

> Although Texas courts have held that a party to a contract cannot recover equitable relief inconsistent with that contract, here Hughes claimed that the book value of his shares was reduced by [Appellants'] oppressive conduct and Hughes sued for shareholder oppression, not breach of contract. In the context of a claim for shareholder oppression, courts have equitable power to order a buy-out at fair value.

The court concluded that it was not an abuse of discretion for the trial court to have calculated fair value rather than book value. *Id.* There are two types of fair value: enterprise value and fair market value. *Id.* at 204. The enterprise value of stock is calculated considering the value of the company as a whole and ascribing to each interest a pro rata portion of the overall enterprise value; it does not include a discount for minority status or lack of marketability. *Id.*; *Argo*, 380 S.W.3d. at 271. Fair market value is the price at which the interest would change hands between a willing seller, under no compulsion to sell, and a willing buyer, under no compulsion to buy, with both parties having reasonable knowledge of relevant facts. *Id.* This methodology includes a minority discount. *Id.*

Receivership is one remedy for shareholder/member oppression. The trial court here appointed a receiver and authorized the sale of company assets. Jacob makes no complaint concerning the receivership or sale. But Parvaneh is not limited to a recovery of her proportionate share of the sale proceeds. Indeed, "courts have equitable powers to fashion appropriate remedies where the majority shareholders have engaged in oppressive conduct." *Davis v. Sheerin*, 754 S.W.2d 375, 380 (Tex.App.--Houston [1st Dist.] 1988, writ denied). This may include a "buyout" in appropriate cases. *Id*; *Ritchie*, 339 S.W.3d at 289. "Wisdom would seem to counsel tailoring the remedy to fit the particular case." *Patton v. Nicholas*, 154 Tex. 385, 279 S.W.2d 848, 857 (1955); *Ritchie*, 339 S.W.3d at 289.

We thus conclude that sufficient evidence supports the values found by the trial court.

Jacob has not argued that the court's methodology constitutes an abuse of discretion, and we perceive none. We overrule this portion of Issue Five.

<em>Punitive Damages</em>

Jacob also challenges the sufficiency of the evidence supporting the award of punitive damages in the amount of $150,000. The trial court did not identify upon which of Parvaneh's claims it based the award of punitive damages, but the only causes of action that could support such an award is actual fraud and breach of fiduciary duty. We have already determined that neither cause of action will support the trial court's judgment. Accordingly, we sustain this portion of Issue Five.

**ATTORNEY'S FEES**

In Issue Six, Jacob challenges the award of attorney's fees. Under Section 37.009, a trial court may award reasonable and necessary attorney's fees that are "equitable and just." TEX.CIV.PRAC.&REM.CODE ANN. § 37.009 (West 2008); *Approach Resources I, L.P. v. Clayton*, 360 S.W.3d 632, 640 (Tex.App.--El Paso 2012, no pet.). The reasonable and necessary requirements are questions of fact to be determined by the fact finder. *Ridge Oil Co., Inc. v. Guinn Investments, Inc.*, 148 S.W.3d 143, 162-63 (Tex. 2004). The equitable and just requirements are questions of law for the trial court to decide. *Id*. Whether to award fees and what amount is equitable and just are questions committed to the trial court's discretion. *Ridge Oil*, 148 S.W.3d at 161-62; *Approach Resources*, 360 S.W.3d at 640. Whether it is "equitable and just" to award attorney's fees depends, not on direct proof, but on the concept of fairness, in light of all the circumstances of the case. *Ridge Oil*, 148 S.W.3d at 162. Although a fact finder may determine the value of the reasonable and necessary expenditures, it remains for the court to determine how much, if any, of the reasonable and necessary fees would constitute a just and

- 24 -

equitable award. *Ridge Oil*, 148 S.W.3d at 162; *Approach Resources*, 360 S.W.3d at 639-40. We review the award of attorney's fees under the Declaratory Judgments Act for an abuse of discretion. *Ridge Oil*, 148 S.W.3d at 163; *Bocquet v. Herring*, 972 S.W.2d 19, 20-21 (Tex. 1998).

Jacob does not complain that the evidence is insufficient to support the trial court's determination that fees in the amount of $165,533.93 are reasonable and necessary. His only argument is that the award of attorney's fees is not equitable and just because the declarations made by the court "have no arguable merit" as argued in Issue Seven. Jacob challenges only two of the four declarations made by the trial court. Even if Jacob is correct that the trial court erred by declaring that the Members Agreement is invalid and inapplicable to Parvaneh, he has not challenged the two other declarations made by the trial court, namely, that the purported transfer of a 5% interest in 360 Center from Mike to Jacob is void and that Parvaneh owns 50% of 360 Center. The record does not reflect any basis for finding that the trial court abused its discretion by concluding that the award of attorney's fees to Parvaneh is equitable and just. For all of these reasons, we overrule Issue Six.

## DECLARATORY RELIEF

In Issue Seven, Jacob maintains that there is no evidence that the 360 Center Members Agreement is void or inapplicable to Parvaneh. The trial court declared:

1. The Members Agreement dated December 6, 2001 is not valid.

2. The Members Agreement dated December 6, 2001 is not applicable to or binding upon Parvaneh.

Jacob did not supersede the portion of the judgment awarding Parvaneh 50% of 360 Center's assets and he agreed to her being paid that portion of the judgment from the funds in the court's registry. The argument section of Jacob's brief begins with the statement that he does not

challenge the trial court's 50/50 allocation of 360 Center's assets. Nor has he challenged the trial court's calculation of the value of 360 Center and allocation of 50% of the assets to Parvaneh and that portion of the judgment has been satisfied. *Kohannim v. Katoli*, No. 08-11-00155-CV, 2011 WL 2586779 (Tex.App.--El Paso June 29, 2011, order)(memorandum opinion). Thus, our resolution of Issue Seven would have no impact on that portion of the judgment. We have already determined that the trial court erred by finding in Parvaneh's favor on her breach of fiduciary duty, constructive fraud, and unjust enrichment claims. This will result in the reversal of the portion of the judgment awarding Parvaneh actual and punitive damages. Consequently, our decision on Issue Seven could not have any impact on the award of damages. Finally, we have overruled Jacob's challenge to the award of attorney's fees under the Declaratory Judgment Act because the trial court made two other declarations which Jacob has not challenged on appeal. As already noted, Jacob has essentially conceded the validity of the other two declarations made by the trial court related to Parvaneh's ownership of a 50% interest in 360 Center and the void transfer of 5% of Mike's interest to Jacob. For these reasons, we overrule Issue Seven as moot. *See Beltran v. Beltran*, 324 S.W.3d 107, 110 (Tex.App.--El Paso 2010, no pet.)(discussing the mootness doctrine and stating that a case is moot when a party seeks a judgment upon some matter which cannot have a practical legal effect upon a then existing controversy).

We reverse and render that portion of the judgment awarding punitive damages to Parvaneh and affirm all aspects of the remainder.

July 24, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating